Syllabus.

## Staunton.

## BAKER MATTHEWS LUMBER COMPANY v. LINCOLN FURNITURE MANUFACTURING COMPANY, INC.

September 22, 1927.

Absent, Prentis, P.

1. OPEN AND CLOSE—*Sales—Cancellation by Buyer—Resale and Action for Damages by Seller—Opening Statement of Counsel—Case at Bar.*—The instant case was an action by the seller of lumber for damages for breach of contract by buyer. The buyer was building a new factory and asked for repeated extensions of time to receive the goods. Finally the buyer asked for a cancellation of the contract. The seller declined this in a letter saying that the fact that the market had declined should have no bearing on the matter, and saying that if the buyer was unwilling to receive the lumber, the seller would be obliged to sell the same and hold the buyer resonsible for any loss sustained. To this the buyer replied that in case the seller saw fit to act as suggested, "just go to it, you of course have the right to do as you please." This ended the correspondence and subsequently the plaintiff sold the lumber and charged the defendant with the difference. In his opening statement counsel for defendant stated that when it was found that defendant's plant would not be completed as early as anticipated various concerns were requested to withhold shipments of lumber purchased by defendant, which requests were complied with and subsequently the lumber was shipped and received by defendant, and that defendant intended all the while to receive the stock purchased from the plaintiff. Plaintiff assigned as error the refusal of the court to exclude this opening statement of counsel.

    *Held:* That there was no merit in this assignment of error, as counsel was well within his rights in the statement he made.

2. OPEN AND CLOSE—*Opening Statement of Counsel—Control of Trial Court.*—Counsel should not in an opening statement refer to matters which under no circumstances could be introduced in evidence, for the purpose of influencing the jury, and while the scope of such statement is of necessity very wide, it is just as much under the control and judgment of the court as the introduction of evidence or the argument of the case upon its merits.

3. Open and Close—*Opening Statement of Counsel—New Trial Where Prejudice Results from Opening Statement.*—Counsel should not be allowed to make the opening statement the medium of argument to the jury upon the merits, and where it is clearly made to appear that prejudice has resulted from an improper opening statement a new trial will be awarded.

4. Sales—*Action by Seller Against Buyer—Breach of Contract by Buyer—Repelling Allegation by Seller that Buyer was Influenced by Falling Prices—Opening Statement of Counsel—Case at Bar.*—In the instant case, an action for breach of contract by the seller of lumber against the buyer, a letter of plaintiff which was filed with the declaration contained the following language: "The fact that the market on this class of material has declined should have no bearing whatever on the matter." This was a poignant imputation upon the motive of the defendant in asking a rescission of the contract or a postponement of the shipment, and the defendant had the right to repel the insinuation that its motive was an improper one. The court properly admitted evidence to this effect when offered by the defendant, and counsel for defendant in his opening statement was within his rights in contradicting the insinuation.

5. Questions of Law and Fact—*Construction and Effect of Written Instruments for Court.*—Construction and effect of written instruments are for the determination of the court.

6. Sales—*Action by Seller for Breach of Contract—Construction of Written Documents for Court—Instructions—Case at Bar.*—In an action by seller of lumber against buyer for breach of contract, plaintiff asked for an instruction that a certain letter of defendant to plaintiff constituted a refusal on the part of the defendant to accept the lumber in question. The court refused to give this instruction and instructed the jury that if they believed from the evidence in the case that the plaintiff was ready and willing to ship the goods at the time of delivery and the defendant refused to accept them, then the refusal was a breach of the contract to purchase on the part of defendant.

   *Held:* Error, as by the latter instruction the court devolved upon the jury the duty of construing the letter and weighing its probative force along with the evidence of witnesses.

7. Questions of Law and Fact—*Interpretation of Documents for Court—Peremptory Instructions.*—The statute against peremptory instructions has no application to that class of cases where the verdict of the jury depends upon the legal effect to be given to a written contract.

8. Sales—*Breach of Contract by Buyer and Resale by Seller of Lumber—Lumber Resold of Same Specifications—Instructions—Case at Bar.*—In the instant case, an action for breach of contract by the seller of lumber against the buyer, the court instructed the jury that plain-

tiff must prove that the lumber resold by the seller upon the breach was of the same specifications as the lumber sold the buyer.

*Held:* A correct statement of the law. The lumber bought was of certain specifications, and the lumber sold must, of course, be of the same specifications in order to correctly determine the amount of damages.

9. SALES—*Resale on Breach of Contract—Seller Acts as Agent of Buyer— Good Faith.*—When a seller undertakes to resell goods bought, but not delivered, he acts as the agent of the buyer and is held to the exercise of good faith. If he has contracted to deliver lumber which has been refused, he thereafter holds this lumber as the property of the buyer, held by him in trust and to be disposed of by him to the best possible advantage.

10. SALES—*Breach of Contract by Buyer and Resale by Seller—Lumber— Specifications—Instructions—Case at Bar.*—In an action by seller of lumber for breach of contract by buyer, the seller had resold the lumber and charged defendant with the difference. The court instructed the jury that plaintiff must prove that the lumber resold was of the same specifications as the lumber sold defendant, and that the jury was not justified in inferring that the lumber was such without sufficient proof that the specifications of the lumber sold were the same and unless this was proved by a preponderance of the evidence, it was the duty of the jury to find for the defendant.

*Held:* That it was error to warn the jury not to enter into the realm of inference, in view of the uncontradicted evidence that the lumber resold was the same lumber sold to the defendant and set apart for him.

Error to a judgment of the Circuit Court of Smyth county, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*L. Preston Collins*, for the plaintiff in error.

*Buchanan & Buchanan*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This was an action of trespass on the case in as-

sumpsit brought by the plaintiff in error against the defendant in error, to recover the sum of $850.00, alleged to be due the plaintiff by the defendant. The plaintiff is a Tennessee corporation engaged in manufacturing and selling lumber. The defendant is a Virginia corporation engaged in manufacturing furniture.

In April, 1923, the defendant placed an order with the plaintiff for 100,000 feet 4/4 common and select plain sap gum lumber at $49.50 per thousand feet. By the terms of sale, the lumber was to be delivered f. o. b. cars at Bristol, Virginia, and shipment thereof was to be made during the month of July.

The defendant, at the time the order was given, was erecting a new plant at Bristol. This plant, on June 11, 1923, was uncompleted. On this date the defendant wrote the plaintiff that their plant was uncompleted and requested that the shipment be delayed until notification. On June 23rd, plaintiff replied to this letter, agreeing to withhold shipment for a reasonable length of time. On July 9th the defendant wrote the plaintiff the following letter:

"Your letter of the 23rd has been unanswered due to the writer's absence from the office. We are going to be quite frank with you and 'lay our cards on the table.'

"This order for gum was placed with you for shipment to our new plant which was at that time under construction. We anticipated the approximate time when we would need this stock, but unforeseen delays have made it impossible for us to be ready at the time specified. The layout of our lumber yard will be such that we can only handle lumber direct from cars to kiln trucks. Our kiln storage tracks, as well as entire dry kiln equipment, have been delayed and construction on kilns and tracks will not be started until the plant is finished.

"We do not see any possibility of being able to receive this lumber before October, and we want to ask that, in view of this situation, you will release us from this order or hold up until we are ready to accept.   We believe that you will be glad to do this, and assure you that it will be remembered in placing our future requirements for lumber."

Replying to this letter, plaintiff wrote defendant:

"We will have the stock ready for you at that time and will arrange to make delivery of the entire lot between October 1st and November 1, 1923."

On October 10th, plaintiff wrote defendant as follows:

"We received a letter a few days ago from Mr. H. N. Saxton, Knoxville, Tenn., wherein he stated that you had requested cancellation of your order No. 39 for 100,000 feet 4/4 No. 1 common and select plain sap gum for shipment to your new plant at Bristol, Va., your reason being based on the fact that your plant would not be completed this year.   We now have before us a clipping from a Knoxville paper indicating that your plant is practically completed and that operations will start in November.

"We accepted your order in good faith and we do not believe you are warranted in requesting cancellation. The fact that the market on this class of material has declined should have no bearing whatever on the matter.

"We are not disposed to accept cancellation.

"In the event you are not willing to receive this stock in accordance with the contract, we will be obliged to sell same for your account and hold you responsible for any loss sustained through your failure to carry out your part of the agreement.   We dislike very much to resort to this procedure but your continued refusal to accept the lumber will necessitate such action as

will protect our interests in the matter. Kindly let us hear from you by return mail, and oblige    *    *."

In reply to this letter the defendant, on October 12th, wrote as follows:

"Your letter of the 10th instant to hand. We are not responsible for what the newspapers say and would say that we have been delayed in getting our new factory started owing to the delay in a number of our contractors, and we have no way of knowing yet when they are going to show up. All the material has been on the ground for many months for the brick stack, and no one has shown up to build it yet. We have not even had a promise of some of the material for tank, and a number of other contractors have not shown up to complete their work yet.

"We expect to purchase several million feet of Gum per year for our plants at Marion and Bristol, and in case you see fit to act as suggested by you, just go to it; you of course have the right to do as you please, but if anything is ever made out of such stuff as this we have never known it."

This ended the correspondence and subsequently thereto the plaintiff sold the lumber to other parties and charged the defendant with the difference.

There was a trial by jury which resulted in a verdict for the defendant, upon which verdict judgment was entered and to that judgment the writ of error in this case was awarded.

It is assigned as error that the court erred in overruling the motion of the plaintiff to exclude the opening statement of counsel for the defendant, and in permitting counsel to persist in said statement over objection. Bill of Exception No. 1 shows that counsel made the following opening statement to the jury: "The Lincoln Furniture Manufacturing Company, In-

corporated, a local concern, was engaged in the manufacturing of furniture at the time that they purchased from the plaintiff in this case the one hundred thousand feet of gum as stated by counsel on the other side and had at the same time purchased from various other concerns many hundreds of thousands of feet of lumber of like specifications.

"When it was found that the Bristol plant would not be completed as formerly anticipated these various concerns were requested to withhold shipment of the lumber thus purchased, which requests were complied with and subsequently the lumber thus purchased was shipped and received by the local concern.

"The Lincoln Furniture Manufacturing Company, Incorporated, intended all of the while to receive the particular stock purchased from the Baker Matthews Lumber Company, Incorporated, and would have received it had it been shipped."

By statute, Code, section 4905, it is provided that on the trial of any case of felony or misdemeanor counsel for the Commonwealth and for the prisoner shall have the right to make an opening statement of their case to the jury. There is no such statutory right respecting the trial of a civil case. However, so deeply rooted is the practice, after the jury is sworn, of permitting opening statements to be made by counsel for the plaintiff and the defendant, that it might be error for the trial court to withhold such permission.

In Burks' Pleading and Practice (2d ed.), section 254, we read: "Immediately after the jury is sworn, counsel are expected to state the case to the jury, so that they may know at this early stage the questions to be decided by them, and make an intelligent application of the evidence as it is adduced. This is called the opening statement of counsel.

"It should be a clear, concise, and brief statement of what the parties expect to prove. It should not be an argument. Generally a chronological order of events will be the most readily understood and borne in mind by the jury, but the facts of some cases are too complex to render this order practicable. In any event, that statement should 'be clear and clean-cut.' "

[1-3] Counsel should not in an opening statement refer to matters which under no circumstances could be introduced in evidence, for the purpose of influencing the jury, and while the scope of such statement is of necessity very wide, it is just as much under the control and judgment of the court as the introduction of evidence of the argument of the case upon its merits. Counsel should not be allowed to make the opening statement the medium of argument to the jury upon the merits, and where it is clearly made to appear that prejudice has resulted from an improper opening statement a new trial will be awarded. That such a situation will not often arise in the future is evidenced by the fact that this is the first time the question has arisen in this State. There is no merit in the assignment of error. Counsel for the defendant was well within his rights in the statement he made.

[4] In the letter of plaintiff, dated October 10, 1923, *supra*, and which is filed with the declaration, this language occurs: "The fact that the market on this class of material has declined should have no bearing whatever on the matter." This was a poignant imputation upon the motive of the defendant in asking a rescission of the contract or a postponement of the shipment. The defendant had the right to repel the insinuation that its motive was an improper one. When evidence to this effect was offered by the defendant, the court very properly permitted it to go to the jury.

[5, 6] The second assignment of error calls in question the refusal of the court to give, at the instance of the plaintiff, the following instruction:

"The court instructs the jury that the letter from the Lincoln Furniture Manufacturing Company, Incorporated, dated October 12, 1923, and directed to the Baker Matthews Lumber Company, Incorporated, constituted a refusal on the part of the defendant corporation to accept the lumber in question."

This instruction, if a proper one, imposed upon the court the duty of construing the letter of October the twelfth and determining the question whether or not the defendant had breached its contract by a refusal to accept shipment of the lumber. The court, on motion of the defendant, gave this instruction:

"The court instructs the jury that if they believe from the evidence in this case that the Baker Matthews Lumber Company, Incorporated, was ready and willing and offering to ship the goods on October 12, 1923, and the Lincoln Furniture Manufacturing Company, Incorporated, refused to accept them, then the refusal was a breach of the contract to purchase, on the part of the Lincoln Furniture Manufacturing Company, Incorporated."

By this latter instruction the court devolved upon the jury the duty of construing the written instrument and weighing its probative value along with the evidence of witnesses. This was error. Construction and effect of written instruments are for the determination of the court.. *Bunker* v. *Lee & wife*, 76 Va. 388; *Union Central Life Ins. Co.* v. *Pollard*, 94 Va. 154, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715; *Saunders* **v.** *Ocean Park Corp.*, 140 Va. 759, 125 S. E. 685.

In *Washington, etc., R. Co.* v. *Lacey*, 94 Va. 465, 26 S. E. 834, Judge Buchanan said: "As a general rule,

the construction of all written documents in evidence belongs to the court exclusively, *· * *.''

[7] In *Saunders* v. *Ocean Park Corp.*, *supra*, McLemore, J., said: *"Nisi prius* courts have always construed contracts in writing and determined their legal effect, unless there was something in the particular contract to take it out of the general rule." Again it is said, on page 763 (125 S. E. 686): "The statute against peremptory instructions has no application to that class of cases where the verdict of the jury depends upon the legal effect to be given to a written contract"—citing *Small* v. *Va. Ry. & P. Co.,* 125 Va. 426, 99 S. E. 525.

Here the contract was embodied in sundry writings, which it was the duty of the court to consider together, and to give full force and effect to the correspondence as a whole.

The letter of October 12th, while a component part of the contract, was complete upon its face and its effect should have been determined by the court.

The last assignment of error complains of the action of the court in giving, at the instance of the defendant, the following instruction:

"The court tells the jury that the plaintiff must prove that the lumber resold was of the same specification as the lumber sold Lincoln. The jury is not justified in inferring that the lumber was such without sufficient proof that the specifications of the lumber sold were the same, and unless this is proved by a preponderance of the evidence it is their duty to find for the defendant, the Lincoln Company."

[8] The first sentence in this instruction contains a correct statement of the law. The lumber bought was of certain specifications, and the lumber sold must, of course, be of the same specifications in order to cor-

rectly determine the amount of damages. Certainly the defendants should not be charged with the differences between the market price of No. 1 lumber bought and the sale price of No. 3 lumber sold.

[9] When a seller undertakes to resell goods bought, but not delivered, it acts as the agent of the buyer and is held to the exercise of good faith. If it has contracted to deliver lumber which has been refused, it thereafter holds this lumber as the property of the buyer, held by it in trust and to be disposed of by it to the best possible advantage.

[10] The vice of the instruction is in the last sentence. The uncontradicted evidence of J. H. Stannard, sales manager for plaintiff, is that the lumber resold was the same lumber theretofore sold to the defendant and set apart for it.

When sales of lumber were made to the Chicago Lumber and Coal Company and to James Elger, Incorporated, and charged to the account of defendant, the record discloses that in each instance invoices showing the number of feet and price thereof of "4/4 No. 1 common and select plain sap gum" were sent to defendant. No denial of receipt of these invoices was made by defendant. In the face of this uncontradicted evidence, it was error to warn the jury not to enter into the realm of inference. Coming from the court, this warning could have but one result, viz: to raise a doubt in the minds of the jurors as to any proof on the question of the specifications of the lumber resold.

The judgment complained of will, therefore, be reversed and annulled and the case remanded to be further proceeded with according to law.

*Reversed.*